UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| MIDWEST CABINET SUPPLIERS, INC.      )<br>                                                                     )<br>                    PLAINTIFF            )   Civil  No.3:22-CV-00493-DJH<br>                                                                     )<br>VS.                                                            )   ELECTRONICALLY FILED<br>                                                                     )<br>                                                                     )<br>VERIZON WIRELESS SERVICES, LLC.   )<br>                                                                     )<br>                    DEFENDANT       ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Comes now the Plaintiff, Midwest Cabinet Suppliers, Inc. ("Midwest" or "Plaintiff"), by Counsel, and pursuant to provisions of Federal Rule of Civil Procedure ("FRCP") 15(a)(1)(B) and this Court's prior Order enlarging time submits the following First Amended Complaint ("FAC") **of right**.

Comes now the Plaintiff Midwest, by Counsel, and for its FAC against the Defendant VERIZON WIRELESS SERVICES, LLC ("Verizon" or "Defendant") hereby alleges and states as follows:

**PARTIES AND LOCATIONS**

1. Plaintiff is, and was at all times set forth herein, a Kentucky Corporation, registered in good standing with the Kentucky Secretary of State and was at all relevant times set forth herein present and doing business in Kentucky and providing goods and services to Cellular Sales of Knoxville ("CSK") at

     locations outside Kentucky where CSK was, at all relevant times, present and doing business. CSK is and was at the time of the events set forth herein an authorized agent/franchisee of Verizon, authorized to sell Verizon products and services at retail locations operated by CSK in several states of the United States.

2. Defendant Verizon is, and was at all times referenced herein, a Delaware Limited Liability Company, with a principal office address in New Jersey, registered in good standing with the Kentucky Secretary of State, and present and doing business in Kentucky and throughout the United States. Verizon has authorized agents/franchisees of Verizon, including CSK, authorized to sell Verizon products and services at retail locations operated by those agents/franchises throughout the United States.

## JURISDICTION AND VENUE

3. Plaintiff hereby restates and incorporates the allegations contained in all preceding paragraphs of this FAC as if fully restated herein again in full.

4. This Court has jurisdiction over this action based upon federal question jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. § 15, as it involves claims for Defendant's violations of Subsection 1 of the Sherman Antitrust Act ( 15 U.S.C. § 1). This Court also has supplemental jurisdiction over any claims related to Defendant's conduct in violations of Kentucky law under 28 U.S.C. §1367.

5. Venue in this district is proper pursuant to 15 U.S.C. § 15, 15 U.S.C. § 22

and/or 28 U.S.C. §1391.

## OVERVIEW OF CLAIMS

6. Through its conduct as detailed hereinafter below the Defendant conducted, participated and/or engaged in an tying agreement with other parties which resulted in significant damage to the business of Midwest and other similarly situated suppliers of retail store cabinets, fixtures and/or installation services for same, in violation of 15 U.S.C. § 1.  Midwest has a private cause of action, upon which this FAC is brought, against Verizon under provisions of 15 U.S.C. § 15, for the aforesaid conduct.  The same conduct by Defendant aforesaid, also violated provisions of Kentucky law (KRS 367.175), for which Midwest has a private cause of action against Verizon under KRS 446.070 and applicable Kentucky precedents.  Finally, Defendant's conduct amounts to a tortious interference with the longstanding business relationship between Midwest and CSK in violation of Kentucky law.

## BASIC FACTUAL ALLEGATIONS

7. Plaintiff hereby restates and incorporates the allegations contained in all preceding paragraphs of this FAC as if fully restated herein again in full.

8. Prior to 2019 Midwest had an ongoing and long-standing business relationship with CSK, for many years, under which Plaintiff provided, manufactured and installed cabinets for all of CSK's retail cellular phone and services stores located in numerous locations in several states in the

United States. That long-term business relationship with CSK made up a significant part of Plaintiff's cabinet manufacturing and installation business.

9. Upon information and belief sometime in 2018 Verizon massaged to its United States agents/franchisees operating Verizon retail stores (including CSK) that all new store locations, relocations, and remodels would require the installation of new Verizon-approved fixtures, including cabinets, as a condition to the agents/franchisees remaining as authorized agents/franchisees of Verison.

10. Upon information and belief Verizon required that its agents/franchisees could only have new fixtures for all new store locations, relocations, and remodels supplied and installed by an authorized vendor approved by Verizon, on a list of vendors furnished to the agents/franchisees by Verizon ("The Verizon List").

11. Upon information and belief The Verizon List of approved vendors resulted from negotiations between Verizon and the vendors that wound up on that list.

12. Upon information and belief while Verizon was aware that many of its agents/franchisees, including CSK, had previously obtained fixtures, cabinets and/or installations of same from suppliers like Midwest, Verizon DID NOT negotiate with or consider many of those vendors, including Midwest, to be included on The Verizon List.

13. Infinity Retail is one of the authorized vendors on The Verizon List – the vendor which CSK ultimately selected from The Verizon List to supply and install new Verizon-approved fixtures at all new store locations, relocations, and remodels operated by CSK.

14. Verizon asserts that it receives no direct economic benefit from the REQUIRED use by the agents/franchisees of ONLY the authorized vendors on The Verizon List. Verizon also asserts that it has no ownership in the authorized vendors on The Verizon List and that it receives no profit from the sales of new fixtures by vendors on the Verizon List. However, upon information and belief, some consideration is, was, or will be provided to Verizon by the vendors placed on The Verizon List. Upon information and belief the aforesaid consideration is/was/will be provided to Verizon get the vendors into a limited group of suppliers to a VAST market–supplying new fixtures, including cabinets and/or installation services, to all new store locations, relocations, and remodels of retail stores operated by Verizons' agents/franchisees in the United States.

15. Midwest was capable of producing and installing cabinets of the same design as those provided by the vendors on The Verizon List to CSK and/or other agents/franchisees of Verizon, at comparable prices. However the aforesaid actions by Verizon effectively LOCKED OUT Midwest and numerous other similarly situated vendors from being considered for inclusion on The Verizon List.

16. Because of the aforesaid actions by Verizon, CSK terminated its long-term business relationship with Midwest and has or will obtain and have installed new cabinets and other fixtures exclusively from Infinity Retail or other approved vendor(s) on The Verizon List.

17. Upon information and belief numerous other entities which were suppliers of cabinets, fixtures and/or installations of same to Verizon retail agents/franchisees prior to 2019 suffered the same interference with and damages to their businesses, across the United States, as Midwest did, as result of The Verizon List and Verizon's activites related to The Verizon List.

18. The result of the aforesaid actions by Defendant was the loss of thousands of dollars of revenue to Plaintiff's business and the near total destruction of that business.  Upon information and belief numerous other businesses supplying similar products and/or services to Verizon agents/franchisees prior to 2019 have suffered similar substantial economic impacts to their businesses as a result of The Verizon List and Verizon's activites related to The Verizon List.

## COUNT I

19. Plaintiff hereby restates and incorporates the allegations contained in all preceding paragraphs of this FAC as if fully restated herein again in full.

20. Verizon has appreciable and significant power in the market for retail store cabinets and fixtures in the United States.  According to information readily

available on the Internet[1] as of December 6, 2022 Verizon has 6,339 locations, in 3,173 cities, in 51 states and territories in the United States. Obviously that many stores will require a significant volume of production of fixtures and installations of same to place fixtures into all new stores, all new store locations, relocations, and remodels of the numerous retail stores operated by Verizon agents/franchisees in the United States.

21. By restricting what entities its agents/franchisees can purchase fixtures and installation services from, for all new store locations, relocations, and remodels operated those agents/franchisees (including CSK) Verizon is affecting a substantial amount of volume of commerce in the market for store fixtures and installation in the United States.

22. As set forth above, upon information and belief some consideration is, was or will be provided to Verizon by the vendors, that were placed on The Verizon List–this gives Verizon an economic interest in the sales of the fixtures and installations of same at all new store locations, relocations and remodels of retail stores operated by Verizon agents/franchisees.

23. As aforesaid, the result of the aforesaid actions by Defendant detailed above in this COUNT I, was the loss of thousands of dollars of revenue to Plaintiff's business and the near total destruction of that business.

24. Verizons' requirement that its United States agents/franchisees can only purchase new fixtures, including cabinets, for all new store locations,

---

[1] https://www.scrapehero.com.

relocations, and remodels operated by all of Verizons' agents/franchisees in the United States from vendors on The Verizon List, in the context set forth above, is an illegal tying agreement, in violation of 15 U.S.C. § 1. That illegal tying agreement resulted in injury and damages to Plaintiff, for which Midwest has a private cause of action against Verizon under provisions of 15 U.S.C. § 15.

25. Based upon the aforesaid violations of 15 U.S.C. § 1, Midwest is entitled to recover from Verizon threefold the damages sustained by Plaintiff as a result of Verizon's conduct, the costs of this action and a reasonable attorney's fee under provisions of 15 U.S.C. § 15 (a)

## COUNT II

26. Plaintiff hereby restates and incorporates the allegations contained in all preceding paragraphs of this FAC as if fully restated herein again in full.

27. Verizons' requirement that its agents/franchisees doing business in Kentucky can only purchase new fixtures, including cabinets, and related installations, all new store locations, relocations, and remodels operated by all of Verizons' agents/franchisees in Kentucky from vendors on The Verizon List, in the context set forth above, is an illegal tying agreement, in violation of Kentucky Revised Statutes ("KRS") 367.175. That illegal tying agreement resulted in injury and damages to Plaintiff, for which Midwest has a private cause of action against Verizon under provisions KRS 446.070 and applicable Kentucky common law.

28. Based upon the aforesaid violations of KRS 367.175 by Defendant, Midwest is entitled to recover from Verizon appropriate compensatory damages.

## COUNT III

29. Plaintiff hereby restates and incorporates the allegations contained in all preceding paragraphs of this FAC as if fully restated herein again in full.

30. As set forth above prior to 2019 Midwest had an ongoing and long-standing business relationship with CSK, for many years, under which Plaintiff provided, manufactured and installed cabinets for all of CSK's retail cellular phone and services stores in numerous locations in several states in the United States.

31. Defendant had to be fully aware of the aforesaid longstanding business relationship between Midwest and CSK as numerous agents, servants and employees of Verizon were likely in the retail stores operated by CSK on a regular basis prior to 2019 and were certainly aware of the suppliers, including Midwest, that CSK regularly used for its business operations.

32. By its aforesaid actions taken with regard to The Verizon List, Verizon had to be aware that it was intentionally interfering with pre-existing business relationships between Midwest and CSK as well as numerous other business relationships between pre-existing fixture suppliers/installers and other Verizon agents/franchisees.

33. Upon information and belief Verizon's improper motive for the aforesaid

actions was to obtain the consideration that is, was or will be provided to Verizon by the vendors, that were placed on The Verizon List.

34. The matters set out above in this COUNT III caused damages to Plaintiff–the loss of thousands of dollars of revenue to Plaintiff's business and the near total destruction of that business.

35. The aforesaid damages were most destructive to Plaintiff's business because Verizon's actions deprived Midwest of one of its largest, most long-standing and best customers–CSK.

36. The aforesaid conduct by Verizon amounts to a tortious interference by Verizon with the longstanding prior business relationship between Plaintiff and CSK.

37. Based upon the aforesaid tortious interference with its business relationship with CSK, Midwest is entitled to recover from Verizon appropriate compensatory damages.

WHEREFORE, the Plaintiff requests:

A. Trial by jury of all issues so triable;

B. An award of appropriate damages against the Defendant in amounts to be determined at trial;

C.  Any and all other relief, at law or in equity, to which it may be entitled.

> Respectfully submitted,
>
> /s/ Harry B. O'Donnell IV
> Harry B. O'Donnell IV KY #83852
> Watterson West Office Building
> 1941 Bishop Lane, Suite 706
> Louisville, KY 40218-1937
> (502) 386-1011
> HODIV@AOL.COM
> Counsel for Plaintiff

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing First Amended Complaint was served by ECM/ECF service on December 12, 2022 to:

Meredith Jones Kingsley
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309-3424
meredith.kingsley@alston.com

Robert Poole
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309-3424
robert.poole@alston.com

Kelley Barnaby
ALSTON & BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, DC 20004-1404
kelley.barnaby@alston.com

> /s/ Harry B. O'Donnell IV

C:\DATA\CURRENT\MIDWEST-C\221212-FAC.wpd