UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MIDWEST CABINET SUPPLIERS, INC.,                                          Plaintiff,

v.                                                        Civil Action No. 3:22-cv-493-DJH

VERIZON WIRELESS SERVICES, LLC,                                        Defendant.

\* \* \* \* \*

## **MEMORANDUM AND ORDER**

Plaintiff Midwest Cabinet Suppliers, Inc. sued Verizon Wireless Services, LLC, alleging that Verizon had engaged in an illegal tying agreement involving its franchisees and tortiously interfered with Midwest's business relationship with Verizon franchisee Cellular Sales of Knoxville (CSK).  (Docket No. 1)  Verizon moved to dismiss and for attorney fees.  (D.N. 11) Midwest amended its complaint to supplement its factual allegations (D.N. 16), and Verizon again moves to dismiss and for attorney fees.  (D.N. 18)  For the reasons set forth below, the Court will grant in part and deny in part Verizon's motion to dismiss the amended complaint and deny Verizon's request for attorney fees.[1]

### I.

The Court "takes the facts only from the complaint, accepting them as true as [it] must do in reviewing a 12(b)(6) motion."  *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020) (citing Fed. R. Civ. P. 12(b)(6)).  However, "mere conclusory statements[] do not suffice," and the

---

[1] Because Midwest amended its complaint after Verizon filed its first motion to dismiss, the initial motion to dismiss will be denied as moot. *See Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021) ("The general rule is that filing an amended complaint moots pending motions to dismiss." (citations omitted)); *see also* 6 Wright & Miller, Federal Practice and Procedure § 1476 (3d ed. 2010) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading.").

Court need not accept such statements as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Sometime in 2018, Verizon began requiring that its franchisees buy their cabinetry exclusively from authorized vendors on the "Verizon List."  (D.N. 16, PageID.85 ¶ 10)  As a result, Midwest lost a longtime customer, Verizon franchisee CSK, to a vendor on the Verizon List, Infinity Retail. (*Id.*, PageID.87 ¶ 16)  This caused "the loss of thousands of dollars of revenue to [Midwest's] business and the near total destruction of that business."  (*Id.*, PageID.87 ¶ 18)

The amended complaint alleges that Verizon required its franchisees to use vendors on the Verizon List because "some consideration is, was, or will be provided to Verizon by the vendors." (*Id.*, PageID.86 ¶ 14)  Midwest asserts that this consideration, whatever it was and whenever it was or will be exchanged, gives Verizon an "economic interest in the sales of the fixtures," turning the Verizon List into an illegal tying agreement in violation of 15 U.S.C. § 15 and Ky. Rev. Stat. § 367.175.  (*Id.*, PageID.88 ¶ 22; *Id.*, PageID.84 ¶ 6)  Midwest also alleges that Verizon tortiously interfered with Midwest's business relationship with CSK because Verizon had the improper motive of "obtain[ing] the consideration that is, was or will be provided to Verizon by the vendors, that were placed on The Verizon List."  (*Id.*, PageID.91 ¶ 33)

Verizon moves to dismiss Midwest's amended complaint on the ground that the factual allegations of Verizon's economic interest and improper motive, as well as the allegations supporting the other elements of Midwest's claims, are too speculative and conclusory to state a claim upon which relief may be granted.  (D.N. 18-1 PageID.101, 108, 116)  Verizon also moves for attorney fees under the Court's inherent power to issue sanctions and under 28 U.S.C. § 1927. (*Id.*, PageID.119-121)  Midwest's response raises two procedural arguments but does not address the substance of Verizon's arguments.  (D.N. 22, PageID.144-49)  The Court will address

Midwest's procedural arguments first before turning to the substance of Verizon's motion to dismiss and request for sanctions.

## II.

In response to Verizon's motion to dismiss, Midwest levies two procedural arguments against ruling on the motion with regard to some or all of the claims.  First, it argues that because Verizon referred to materials outside of the pleadings in its motion to dismiss, the Court must convert the motion to one for summary judgment and allow the parties to present all materials that may be relevant to deciding the motion.  (D.N. 22, PageID.144-46)  Second, Midwest urges the Court to decline to exercise supplemental jurisdiction over its state-law claims should the Court dismiss its federal claim.  (D.N. 22, PageID.148-49)  The Court will address Midwest's conversion argument and return to Midwest's supplemental jurisdiction argument after deciding the substance of Verizon's motion to dismiss.

### A.    Conversion of Verizon's Motion under Federal Rule of Civil Procedure 12(d)

If, on a motion to dismiss, "matters outside of the pleadings are presented to *and not excluded by the court*, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d) (emphasis added).  By the terms of the rule, if matters outside the pleadings are presented to but excluded by the court, there is no need to treat the motion to dismiss as one for summary judgment.  *Id.*  Courts may need to expressly reject, rather than merely disregard, evidence outside the pleadings to avoid converting the motion.  *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020) (finding harmless error in district court's failure to explicitly reject materials outside the pleadings appended to motion to dismiss).

Moreover, even if a court considers evidence attached to a motion to dismiss that is not part of the complaint, it may not have to convert the motion under Rule 12(d).  The Sixth Circuit

has taken a "liberal view of what matters fall within the pleadings" for purposes of Rule 12(d); courts may consider "public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies," as well as documents referred to in the complaint that are central to the claim. *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001).

Here, Midwest objects to Verizon's references to (1) Exhibit A to the motion to dismiss, a letter sent by Verizon to Midwest explaining the perceived futility of the litigation and advising Midwest to withdraw its suit; and (2) census data regarding the number of retail stores in the United States.[2]  (D.N. 22, PageID.146-47).  Neither is necessary to resolve Verizon's motion to dismiss, and so the Court expressly declines to consider either Verizon's letter or the census data in deciding the motion.  There is thus no need to convert Verizon's motion to one for summary judgment.[3]  *See Bates*, 958 F.3d at 484.

## III.

The Court now turns to the substance of Verizon's motion to dismiss.  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads

---

[2] Verizon cites US Census data on the retail store sector to support its argument that it lacks significant power in the market for retail store cabinetry.  (D.N. 18-1, PageID.105 n.4 (citing United States Census Bureau, Economic Surveys (2020), https://data.census.gov/table?q=Retail+Trade:+Summary+Statistics+for+the+U.S.,+States,+and+Selected+Geographies:+2020))

[3] The Court could, of course, take judicial notice of the census data cited in the motion to dismiss. Contrary to Midwest's characterization of the data as improper "internet sources" (D.N. 22, PageID.147), "United States census data is an appropriate and frequent subject of judicial notice." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571–72 (5th Cir. 2011) (citing *United States v. Esquivel*, 88 F.3d 722, 726–27 (9th Cir. 1996)); *see also Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1322 (S.D. Fla. 2015) (taking judicial notice of census data); *Bennett v. Bd. of Comm'rs for E. Jefferson Levee Dist.*, No. CIV.A. 07-3130, 2007 WL 2571942, *5 (E.D. La. Aug. 31, 2007) (same).

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

In its response, Midwest fails to address Verizon's arguments that the amended complaint lacks the requisite factual allegations. Furthermore, as explained below, the amended complaint plainly falls short of the modern pleading standards with respect to at least one element of the federal antitrust claim. The federal claim must therefore be dismissed and, for the reasons explained below, the Court will not exercise supplemental jurisdiction over Midwest's state claims having dismissed the federal tying claim.

**A.     Midwest Concedes the Substance of the Motion to Dismiss.**

Verizon correctly points out that Midwest's response brief fails to respond to the substance of the motion to dismiss. (D.N. 23, PageID.159-61; D.N. 22) Aside from the procedural arguments that the Court has already addressed, Plaintiff's response merely accuses Verizon's motion of being "rambling, off point, gobbledygook" and asks the Court to "make its own determination as to if Plaintiff's [first amended complaint] states a claim" under *Conley v. Gibson*, 355 U.S. 41 (1957). (D.N. 22, PageID.148) But as discussed above, the current pleading standard is found in *Twombly* and *Iqbal*.[4] Midwest does not argue that it has alleged sufficient facts to state a plausible claim for relief. The Court therefore agrees with Verizon that Midwest has conceded the substance of Verizon's motion to dismiss and abandoned its federal claim by failing to address either in its

---

[4] The Supreme Court retired *Conley*'s "no set of facts" test in *Twombly*. *See* 550 U.S. at 562-63.

response to the motion to dismiss.  *See Bazinski v. JPMorgan Chase Bank, N.A.*, 597 F. App'x 379, 380-81 (6th Cir. 2015) (affirming dismissal where district court found several claims abandoned through plaintiff's failure to address them in response to motion to dismiss); *Degolia v. Kenton Cnty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019) (quoting *Rouse v. Caruso*, No. 06-CV-10961-DT, 2011 WL 918327, at *18, 2011 U.S. Dist. LEXIS 25776 at *58 (E.D. Mich. Feb. 18, 2011)) ("[I]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

**B.    Midwest Fails to Allege Facts to Support Its Federal Claim.**

Even if Midwest had not conceded the substance of Verizon's motion, the complaint fails to adequately allege at least one element of the federal claim.  In its complaint, Midwest accuses Verizon of engaging in an illegal tying arrangement in violation of the Sherman Act.  (D.N. 16, PageID.84 ¶ 6)  A tying arrangement is "'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'"  *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 461 (1992) (quoting *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5-6 (1958)).  The Sixth Circuit has held that "where the seller of the tying product and the seller of the tied product are different entities, the plaintiff must allege a direct economic benefit to the tying seller in order to survive a Rule 12(b)(6) motion."  *CTUnify, Inc. v. Nortel Networks, Inc.*, 115 F. App'x 831, 834 (6th Cir. 2004).

Here, Midwest alleges that Verizon engaged in a tying arrangement by conditioning eligibility for a Verizon franchise (the tying product) on the use of vendors from "a list of vendors

furnished to the agents/franchisees by Verizon" (the tied product).[5]  (D.N. 16, PageID.84-86, ¶¶ 9, 10, 14)  Midwest does not allege that Verizon itself provides fixtures to its franchisees, but rather that the "Verizon List of approved vendors resulted from negotiations between Verizon and the vendors."  (D.N. 16, PageID.85 ¶ 11)  Since Verizon and the authorized vendors are different entities, Midwest must allege that Verizon received a direct economic benefit from the use of authorized vendors, rather than indirect benefits such as increased uniformity across franchisees. *See CTUnify*, 115 F. App'x at 834.  Midwest attempts to meet this requirement by alleging that "some consideration is, was, or will be provided to Verizon by the vendors" and asserting that "this gives Verizon an economic interest in the sales."  (D.N. 16, PageID.88 ¶ 22)  But such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to avoid dismissal.  *Iqbal*, 556 U.S. at 678.  Because Midwest's complaint lacks specific facts showing that Verizon had a direct economic interest in the purchase of fixtures from its approved vendors, the tying claim cannot survive Verizon's motion to dismiss.[6] *See CTUnify*, 115 F. App'x at 834; *Iqbal*, 556 U.S. at 678.

---

[5] It is not clear that franchise eligibility can serve as the tying product or market in a federal antitrust claim.  *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 443 (3d Cir. 1997) (rejecting plaintiffs' arguments that franchise rights represent a tying product, rather than a "function of Domino's contractual powers under the franchise agreement to terminate the participation of franchisees in the franchise system if they violate the agreement."); *but see Shamrock Mktg., Inc. v. Bridgestone Bandag*, LLC, 775 F. Supp. 2d 972, 984 (W.D. Ky. 2011) (noting that courts have been willing to find that franchise agreements constitute illegal tying arrangements under certain circumstances).

[6] In light of this conclusion, the Court need not reach Verizon's arguments as to the elements of Midwest's tying claim other than Verizon's direct economic interest.

## C.    Supplemental Jurisdiction

Midwest argues that the Court should decline to exercise supplemental jurisdiction over its state claims if the federal claim fails.[7]  The Sixth Circuit "has held that 'a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.'" *Winkler v. Madison Cnty.*, 893 F.3d 877, 905 (6th Cir. 2018) (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014)).  The decision whether to exercise supplemental jurisdiction over pendant state-law claims is "purely discretionary" for the district court.  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).  However, this discretion "should be exercised only in cases where the 'interests of judicial economy and the avoidance of multiplicity of litigation' outweigh [the Court's] concern over 'needlessly deciding state law issues.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).

According to Verizon, the Court should exercise its discretion to decide Midwest's state-law claims because (1) Midwest sought review of the state-law claims in federal court; (2) Verizon has "responded to the merits of Midwest's claims a total of three times" and would have to do so again in state court; and (3) the state-law claims "do[] not implicate any nuance or complexity in Kentucky law that require a state court's guidance."  (D.N. 23, PageID.163)  None of these arguments justifies retaining supplemental jurisdiction, however.  The policy against needlessly deciding state-law claims applies equally to actions filed in federal court and those that were

---

[7] Midwest's brief only mentions the state tortious-interference claim.  (D.N. 22, PageID.148-49)  The discretion to decline supplemental jurisdiction under § 1367(c)(3) belongs to the Court and may be exercised without the parties having invoked it.  *See Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 359 (6th Cir. 2004).  Midwest's failure to mention the antitrust claim therefore has no effect on the propriety of retaining jurisdiction over the claim.  *Id.* ("existence of subject matter jurisdiction, moreover, is an issue that may be raised any time, by any party or even sua sponte by the court itself") (quoting *Cmty. Health Plan of Ohio v. Mosser*, 347 F.3d 619, 622 (6th Cir. 2003)).

removed. *See, e.g.*, *Moon*, 465 F.3d at 728 (remanding with instructions to dismiss without prejudice state-law claim originally filed in federal court). Similarly, § 1367(c)(3) by its very nature typically becomes an issue when the federal claims have been dismissed after briefing by both sides, often at the summary-judgment stage. *See, e.g.*, *Winkler*, 893 F.3d at 905 (affirming dismissal of state-law claims without prejudice as proper following summary judgment on federal claim). Finally, the duty of the Court is to avoid needlessly deciding state-law issues, not just state-law issues that are novel or complex. *See Moon*, 465 F.3d at 728.

In the alternative, Verizon argues that the Court has original diversity jurisdiction over Midwest's state-law claims and that § 1367(c)(3) is therefore inapplicable. (D.N. 23, PageID.164) Midwest invoked only federal-question jurisdiction and supplemental jurisdiction, however (D.N. 16, PageID.83 ¶ 4), and it is not apparent from the face of the complaint that diversity jurisdiction exists. The Court therefore lacks original jurisdiction over the state-law claims and declines to exercise supplemental jurisdiction over those claims under § 1367(c)(3).

## IV.

In addition to dismissal, Verizon seeks sanctions and attorney fees against Midwest and its lawyer under the Court's inherent authority and 28 U.S.C. § 1927. (D.N. 18-1, PageID.119-121) According to the motion, Midwest's complaint serves only to vex Verizon. While Verizon may well find the litigation irritating, that does not mean that Midwest's only purpose in suing was to annoy Verizon.

Under § 1927, "an attorney is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). The standard for sanctions under the Court's inherent authority is higher: courts may assess fees

9

only "against counsel who willfully abuse judicial processes or who otherwise act in bad faith." *Red Carpet*, 465 F.3d at 646. To award attorney's fees, a court must make "a specific finding as to whether counsel's conduct in [the] case constituted or was tantamount to bad faith." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766-77 (1980) (carving out the "bad-faith exception for the award of attorney's fees" and remanding for the district court to make the necessary specific finding.

Verizon bases its argument for sanctions on *Dubuc v. Green Oak Township*, which held that sanctions are appropriate when a party advances claims that they knew or should have known were meritless and "the motive for filing suit was for an improper purpose such as harassment." 482 F. App'x 128, 132 (6th Cir. 2012). The facts of *Dubuc* illustrate the type of conduct warranting sanctions that is absent in this case. Dennis Dubuc filed more than ten lawsuits challenging permit denials by Green Oak Township, reaching the Sixth Circuit six times. *Id.* at 129. He was sanctioned in 1999 due to his "vexatious tactics that . . . led to years of abusive litigation" against the Township. *Dubuc v. Green Oak Twp.*, 609 N.W.2d 829 (Mich. 2000) (Corrigan, J., concurring). Later, in the case cited by Verizon, Dubuc amended his complaint to add a § 1983 claim against opposing counsel, Michael Rosati. *Dubuc*, 482 F. App'x at 130. Dubuc voluntarily dismissed that claim after it forced the township to terminate Rosati's representation and retain substitute counsel. *Id.* The district court then sanctioned Dubuc and his attorney, finding that the claim against Rosati was made "either to draw out the litigation or to inconvenience the Township by causing Rosati to withdraw as their counsel" and that Dubuc's attorney could not plead ignorance of the tactic. *Id.* at 131.

This case is distinguishable from *Dubuc*. Verizon does not claim that Midwest has harassed it with multiple frivolous lawsuits or engaged in bad-faith tactics, apart from a last-minute amended complaint. (D.N. 18-1, PageID.120) Instead, Verizon focuses on the lack of factual

allegations in the original and amended complaints and the letter that it sent to Midwest threatening to seek sanctions if Midwest did not drop the lawsuit. (D.N. 18-1, PageID.119-20) There is nothing to suggest that Midwest's purpose has been to multiply the litigation or harass Verizon. *See Dubuc*, 482 F. App'x at 131-32. Failure to state a claim in the complaint, without more, is not a basis for sanctions under § 1927 or the court's inherent authority: a party seeking sanctions must establish their opponent's bad faith or intentional abuse of the judicial process. *See Red Carpet*, 465 F.3d at 646; *Piper*, 447 U.S. at 767. Moreover, §1927 only applies to unnecessary filings that multiply proceedings and prolong litigation, not the initial pleading. *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008); *Macort v. Prem, Inc.*, 208 F. App'x 781, 786 (11th Cir. 2006); *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) ("The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927").

Verizon has not shown that Midwest or its counsel have acted in bad faith or that Midwest's post-complaint filings have served only to multiply the litigation. *See Piper*, 447 U.S. at 767; *Dubuc*, 482 F. App'x at 131-32; *Red Carpet*, 465 F.3d at 646. Sanctions are not warranted in this case.

**V.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Verizon's initial motion to dismiss and for attorney fees (D.N. 11) is **DENIED** as moot.

(2)    Verizon's second motion to dismiss and for attorney fees (D.N. 18) is **GRANTED** as to Midwest's federal claim.  The federal tying claim is **DISMISSED**.  The motion is **DENIED** as to attorney fees.

(3)    Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise jurisdiction over Midwest's state-law claims.  The claims of illegal tying under Ky. Rev. Stat. § 367.175 and of tortious interference with a prospective business advantage are therefore **DISMISSED** without prejudice.  Verizon's second motion to dismiss (D.N. 18) is **DENIED** as moot with respect to these claims.

(4)    This action is **DISMISSED** and **STRICKEN** from the Court's docket.

September 27, 2023

**David J. Hale, Judge**
**United States District Court**

12